IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIC BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12cv775-SRW |
| | ) | |
| VALIDATA COMPUTER & | ) | |
| RESEARCH CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF OPINION AND ORDER**

In this ERISA action, plaintiff Eric Brown – the personal representative of decedent Shawn Q. Brown's estate and the beneficiary of his interest in the Validata Computer and Research Corporation 401(k) Profit Sharing Plan and Trust – sues Validata Computer & Research Corporation and its President, Warren C. Philips,[1] for their failure to comply with his requests for information about the plan. He asserts two claims against both defendants arising from this failure: (1) a claim styled "Failure to Provide Information," brought pursuant to 29 U.S.C. § 1132(c)(1) and the applicable disclosure provision, 29 U.S.C. § 1024(b)(4); and (2) a claim for "Breach of Fiduciary Duty." (Doc. # 24, First Amended Complaint). This action is presently before the court on the motion to dismiss filed by defendant Philips (Doc. # 27). The motion to dismiss is due to be granted – pursuant to Rule 12(b)(6) – as to Count II, plaintiff's breach of fiduciary duty claim. The court further

---

[1] The court spells Philips' surname as it appears in his motion to dismiss and his own affidavit.

concludes – applying Rule 56 standards, pursuant to Rule 12(d) – that Philips is entitled to summary judgment on Count I, plaintiff's "Failure to Provide Information" claim.[2]

## RULE 12(b)(6) STANDARD

To overcome a defendant's Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Twombly, 550 U.S. at 555). "[C]omplaints ... must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Randall v. Scott, 610 F.3d 701, 707 n. 2 (11th Cir. 2010)(internal quotation marks omitted). Courts considering motions to dismiss first "eliminate any allegations in the complaint that are merely legal conclusions" and, then, determine whether the well-pleaded factual allegations of the complaint – assuming their veracity – "'plausibly give rise to an entitlement to relief.'" See American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)(citing Iqbal, 129 S.Ct. at 1950). In

---

[2]  By order entered on May 20, 2013, the court advised the parties of its intention to consider the evidence of record and allowed plaintiff an opportunity to file, at his option, an additional response to the motion. See Fed. R. Civ. P. 12(d). Plaintiff chose not to do so. Thus, the motion is submitted on plaintiff's previous responses. (See Doc. # 29)(incorporating by reference Docs. ## 15 and 19).

considering a Rule 12(b)(6) motion, the court "'limits its consideration to the pleadings and exhibits attached thereto.'"  Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006)(quoting Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000)(*per curiam*)).

## RULE 56 STANDARD

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied.  Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. den.*, 133 S.Ct. 1810 (2013).  If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial.  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011); Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010);  Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]"  Josendis, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4).  The court views the evidence and all reasonable factual inferences in the light

most favorable to the nonmovant.  <u>Miller's Ale House, Inc. v. Boynton Carolina Ale House,</u>

<u>LLC</u>, 702 F.3d 1312, 1316 (11th Cir. 2012).  However, "'[i]f no reasonable jury could return

a verdict in favor of the nonmoving party, there is no genuine issue of material fact and

summary judgment will be granted.'" <u>Morton v. Kirkwood</u>, 707 F.3d 1276, 1284 (11th Cir.

2013)(citation omitted).

## DISCUSSION

### Count II - Breach of Fiduciary Duty

<u>Plaintiff's Allegations and the Claimed Breach of Duty</u>

In his amended complaint, plaintiff alleges that Shawn Q. Brown worked for Validata

and was a plan participant until his death on October 26, 2011; defendant Philips is a trustee

of the plan; Philips and Validata are administrators and fiduciaries of the plan; and plaintiff

is the personal representative of the decedent's estate and the beneficiary of the decedent's

interest in the plan. He further alleges that he "and/or" Ileana Brown (the primary beneficiary

until she executed a disclaimer of her interest on March 13, 2012) "inquired of Defendants

via face-to-face meetings, telephone calls, letters, and e-mail exchanges about the Plan and

requested various documents and information related to the Plan,"[3] and that, on  February 2,

2012, plaintiff and Ileana Brown both signed and sent a letter to Philips, requesting "various

documents and information related to the Plan, including the summary plan description,

---

[3] Ileana Brown is not a party to this action.

4

annual benefit statements for the Plan, and/or summary annual reports filed with the Department of Labor." Plaintiff alleges that Ileana Brown executed a disclaimer of her interest in the plan on March 13, 2012 and that, on March 16, 2012, plaintiff "wrote Defendants, transmitted certain documents relating to Decedent's interest in the Plan, including the disclaimer of Iliana Brown" and "requested ... that Defendants provide documents relating to the Plan, including annual benefit statements for the years ending 2010 and 2011." Plaintiff further alleges that, despite repeated requests – by plaintiff on his own behalf and through counsel – the defendants, "[p]rior to the filing of the instant action [on September 7, 2012], ... failed to provide Plaintiff with copies of the documents requested." Plaintiff maintains that defendants' failure to provide the requested documents violates the ERISA document disclosure obligation set forth in 29 U.S.C. § 1024(b)(4)[4] and resulted in plaintiff's inability "to determine the value of his interest in the Plan, to accurately file a claim for benefits, or to timely choose a payment method." (Doc. # 24, ¶¶ 1, 4-8, 14-26, 29; Docs. ## 24-1 through 24-3).

In Count II, plaintiff claims that "[d]efendants' failure or refusal to timely provide Plaintiff with accurate and complete information and documents and to accurately communicate Plan benefits to Plaintiff constitutes a breach of the fiduciary duties owed by

---

[4] This section of the statute provides that "[t]he [plan] administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

5

Defendants to Plaintiff." (Doc. # 34). While he notes a trustee's duty "to comply with the disclosure requirements of ERISA" (id., ¶ 33), and the plan administrators' duties, as fiduciaries, to provide "timely, accurate, and complete information *and* documents" (id., ¶ 32; emphasis added), plaintiff does not allege that Philips conveyed any *inaccurate* information, nor does he describe – either within Count II or elsewhere in his complaint – the nature of any "information" that Philips withheld from him, other than the documents at issue in Count I, plaintiff's "Failure to Provide Information" claim. (See Doc. # 24). The relief plaintiff seeks in Count II includes, *inter alia*, the statutory penalty authorized by § 1132(c) for failure of an administrator to mail – within 30 days after a participant's or beneficiary's request for information – material that the administrator is required by ERISA to provide. (Doc. # 24, p. 7). Thus, the court concludes – as defendant argues – that "the sole duty at issue [in Count II] is that of disclosure under 29 U.S.C. § 1024(b)(4)[.]" (Doc. # 27, p. 7).[5]

Defendant's Motion to Dismiss

Philips contends that Count II is due to be dismissed because: (1) plaintiff's remedy for a § 1024(b)(4) violation is the cause of action established by § 1132(c) against the plan administrator rather than a claim against him for breach of fiduciary duty; and (2) an ERISA claim for breach of fiduciary duty may be brought only on behalf of the plan as a whole to

---

[5] Plaintiff does not argue to the contrary in his response to the motion to dismiss; instead, he appears to agree that his claim is premised on Philips' failure to provide requested plan documents. (See Doc. # 29; id. at ¶¶ 6, 9).

recover for losses to the plan caused by the breach, pursuant to 29 U.S.C. § 1109 and § 1132(a)(2). (Doc. # 27, p. 8). The court addresses defendant's latter argument first.

### *Plaintiff Does Not Assert a Claim on Behalf of the Plan*

Plaintiff does not indicate – in either his amended complaint or his response to Philips' motion to dismiss – which subsection of ERISA's civil enforcement provision authorizes his claim for individual relief arising from Philips' alleged breach of fiduciary duty, and does not respond directly to defendant's contention that § 1132(a)(2) does not provide such authorization. Section 502(a)(2) of ERISA[6] – which permits a cause of action "for appropriate relief under [29 U.S.C.] section 1109"– provides a remedy only for injuries to a *plan*, either as a whole or to the plan assets within an individual account that is part of a defined contribution plan; it does not provide a remedy for individual injury. LaRue v. DeWolff, Bobert & Associates, Inc., 552 U.S. 248, 254 (2008)(a breach of fiduciary duty that impairs the value of an individual account that is within a defined contribution plan is actionable under § 1109); Varity Corp. v. Howe, 516 U.S. 489, 515 (1996)(plaintiffs could not proceed under ERISA section 502(a)(2) "because that provision, tied to § 409, does not provide a remedy for individual beneficiaries" and, therefore, "[t]hey must rely on the third subsection [502(a)(3)] or they have no remedy at all")(citing Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985)); Russell, 473 U.S. at 140-42 ("The Court of Appeals' opinion [allowing an individual beneficiary's claim for damages arising from a

---

[6] 29 U.S.C. § 1132(a)(2).

7

breach of fiduciary duty] focused on the reference in § 409 to 'such other equitable or remedial relief as the court may deem appropriate.' But when the entire section is examined, the emphasis on the relationship between the fiduciary and the plan as an entity becomes apparent. ... To read directly from the opening clause of § 409(a), which identifies the proscribed acts, to the 'catchall' remedy phrase at the end – skipping over the intervening language establishing remedies benefiting, in the first instance, solely the plan – would divorce the phrase being construed from its context and construct an entire new *class* of relief available to entities other than the plan.")(emphasis in original); see Lanfear v. Home Depot, Inc., 536 F.3d 1217 (11th Cir. 2008)(former employees were "participants" entitled to assert a claim for breach of fiduciary duty under 29 U.S.C. §§ 1109 and 1132(a)(2) because their claim "for the decrease in value of a defined contribution account" was "limited to the difference between the benefits actually received and the benefits that would have been received if the plan management had fulfilled its statutory obligations" and, therefore, was not a claim for extracontractual damages).

Plaintiff does not identify any injury to the plan either in his amended complaint or his argument. However, contrary to defendant's view, §1132(a)(2) is not the exclusive ERISA enforcement provision for a breach of fiduciary duty claim, and the plaintiff need not proceed on behalf of a plan to assert a such a claim. In arguing that he has stated a claim, plaintiff relies on Hamilton v. Allen-Bradley Co., 244 F.3d 819, 827 (11th Cir. 2001). (Doc. # 29, ¶ 9). In Hamilton, the Eleventh Circuit determined that, although § 1109 did not

contemplate the plaintiff's private cause of action, she could bring her breach of fiduciary duty claim through the "catch-all" safety net provided by § 1132(a)(3).  Since plaintiff cites Hamilton and does not identify any injury to the plan, the court concludes – despite plaintiff's demand for statutory penalties and unspecified monetary damages in Count II – that he brings his breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3), one of the two "catch-alls" in ERISA's civil enforcement provision.  See Varity, 516 U.S. at 513.[7,8] Thus, the it turns to the question of whether – accepting plaintiff's well-pleaded factual allegations as true – plaintiff's amended complaint states a claim for relief under § 1132(a)(3).

*Plaintiff Fails to State a § 502(a)(3) Claim*

Philips contends that plaintiff's remedy for a § 1024(b)(4) violation is the cause of action established by § 1132(c) against the plan administrator rather than a claim against him for breach of fiduciary duty.  (Doc. # 27, pp. 7-8).  Plaintiff responds that his amended complaint states a breach of fiduciary duty claim against Philips that is plausible on its face, noting that he has alleged that Philips is a fiduciary of the plan who has failed in his duty to respond to plaintiff's requests for information about the plan.  (Doc. # 29, ¶¶ 7-12).

A plaintiff may pursue the "safety net" equitable relief afforded by section 502(a)(3)

---

[7]  The other "catch-all" allows actions by the Secretary of Labor for injunctive or equitable relief to remedy any ERISA violation.  See id.; 29 U.S.C. § 1132(a)(5).

[8]  Section 502(a)(3) provides equitable relief only. 29 U.S.C. § 1132(a)(3).  The phrase "other equitable relief" in Section 502(a)(3) means "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Mertens v. Hewitt Associates, 508 U.S. 248, 256-57 (1993)(emphasis in original).

only if Congress has not provided elsewhere in ERISA's framework for an adequate remedy to address the plaintiff's injury. <u>Ogden v. Blue Bell Creameries, U.S.A.</u>, 348 F.3d 1284 (11th Cir. 2003); <u>Katz v. Comprehensive Plan of Group Insurance</u>, 197 F.3d 1084, 1088-89 (11th Cir. 1999), *rehearing and suggestion for rehearing en banc den.*, 209 F.3d 726 (2000).  In determining whether a plaintiff has stated a claim under section 502(a)(3), the "relevant concern" is whether the plaintiff "also had a cause of action, based on the same allegations, under Section 502(a)(1)(B) *or ERISA's other more specific remedial provisions*." <u>Jones v. American General Life and Accident Ins. Co.</u>, 370 F.3d 1065, 1073 (11th Cir.), *rehearing and suggestion for rehearing en banc den.*, 116 Fed. Appx. 254 (2004)(discussing the Supreme Court's rationale in <u>Varity</u>)(emphasis added).  Thus, to assess whether plaintiff states a claim in Count II, the court must determine "whether the allegations supporting the Section 502(a)(3) claim [are] also sufficient to state a cause of action" (<u>Jones</u>, 370 F.3d at 1073) under another of ERISA's more specific remedial provisions.  If they are, plaintiff may not maintain his breach of fiduciary duty claim under the "catch-all" provision.

ERISA's section 502(a)(1)(A) – 29 U.S.C. § 1132(a)(1)(A) – authorizes a beneficiary to bring a civil action to obtain the relief specified in § 1132(c)(1)(B) for an administrator's failure or refusal "to comply with a request for any information which such administrator is required by [ERISA's employee benefit protection provisions, including § 1024(b)(4)] to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request[.]"  29

U.S.C. § 1132(c)(1)(B). As noted above, § 1024(b)(4) requires the plan administrator, "upon written request of any participant or beneficiary," to "furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). ERISA defines the term "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

Plaintiff argues that: (1) "[i]t is well settled that a fiduciary's failure to disclose plan information, standing alone, constitutes a breach of fiduciary duty under ERISA," and (2) "[t]his is certainly the case in an instance such as this where the Plan documents requested from a fiduciary, Phillips, by a beneficiary, Brown, were (a) requested in writing and (b) contained in the list of documents required to be furnished to plan participants and beneficiaries under 29 U.S.C. § 1024(b)(4)." (Doc. # 29, ¶ 9)(citing Hamilton, 244 F.3d at 827). Plaintiff does not plead his two claims in the alternative. (See Doc. # 24). Instead, he contends that he is entitled to proceed on *both* claims against Philips. (See Doc. # 29, ¶¶ 8, 12 (asserting that he has stated a breach of fiduciary duty claim against Philips, as plan trustee) and ¶ 29 (Philips acted as plan administrator and, accordingly, "the claims against Phillips contained in Count I of the Amended Complaint *also* must stand")(emphasis added)). Plaintiff clearly maintains, in his response to the present motion, that he has stated a claim for relief against Philips in Count I. The motion to dismiss is due to be granted as to Count

II on the basis of this concession alone.  See Jones, 370 F.3d at 1073.[9]

_____

     [9]  To the extent that the Hamilton panel held that a plaintiff may pursue a breach of fiduciary duty claim under section 502(a)(3) even when her complaint also states a claim for benefits under section 502(a)(1)(B), it departed from prior Eleventh Circuit precedent. In Hamilton, the Eleventh Circuit determined that "Hamilton's complaint was sufficient to state a cause of action against [her employer, Allen-Bradley Company (alleged to be administrator of the disability plan at issue)] for wrongful denial of benefits[.]"  Hamilton, 244 F.3d at 823-24.  The court further concluded that Hamilton's complaint sufficiently alleged a breach of fiduciary duty claim under section 502(a)(3) of ERISA against the employer, arising from its "failure to disclose truthful information" to her about the plan. Id. at 825. The Hamilton panel reversed the district court's grant of summary judgment on the breach of fiduciary duty claim because: (1) the district court had relied on Simmons v. Southern Bell Tel. & Tel. Co., 940 F.2d 614, 617 (11th Cir. 1991), which held that "§ 1109(a) provides an exclusive remedy under ERISA and that no private right of action is allowed" – a case that had been "reversed by the Supreme Court over three years before the district court entered its ruling" (i.e., its holding was abrogated by Varity); and (2) "because most of the acts that Hamilton has alleged Allen committed fall under the rubric of fiduciary acts." Hamilton, 244 F.3d at 825-26, 827.  The court rejected the employer's argument that "Varity does not apply in this case because Hamilton has not asserted a cause of action under the catch-all provision of ERISA, but rather under a provision where the statute has already contemplated a remedy."  Id. at 826 (citing 29 U.S.C. § 1132(a)(1)(B)).  The court reasoned that "the remedy [Hamilton] seeks is outside ERISA ... because a private cause of action is not contemplated within the four corners of the statute" and, thus, "the catch-all provision automatically applies" and "Hamilton has standing to bring a cause of action against Allen" (id. (emphasis added)), despite its earlier observation that "the only relief sought [in Hamilton's complaint] was reinstatement of disability benefits based on a wrongful denial" and its resulting conclusion that Hamilton's allegations stated a claim against Allen for wrongful denial of benefits, a claim that arises under 29 U.S.C. § 1132(a)(1)(B). (See id. at 824). Under Hamilton, a plaintiff asserting a private cause of action that otherwise sufficiently alleges a breach of fiduciary duty under ERISA may always proceed under section 502(a)(3) – "because a private cause of action [for breach of fiduciary duty] is not contemplated within the four corners of the statute" (id. at 826).  However, the Hamilton panel's holding appears to be at odds with the Eleventh Circuit's decision in Katz – a decision rendered fifteen months earlier and not distinguished by the Hamilton court. In Katz, the district court dismissed the ERISA plaintiff's section 502(a)(3) breach of fiduciary duty claim – "without examining the merits of [the claim]" – because it concluded that the plaintiff could pursue a claim for benefits and, therefore, had "an adequate remedy under § 1132(a)(1)(B)[.]" Katz, 197 F.3d at 1087-88, 1088 n. 15. The Eleventh Circuit affirmed the district court's ruling, concluding that, "[a]t the time the December 17, 1997, order was entered, Mrs. Katz had an adequate remedy under § 1132(a)(1)(B), a position which she was strenuously asserting in Count I of her complaint." Id. at 1089, 1091.  Hamilton and Katz both addressed the availability of a section 502(a)(3) breach of fiduciary duty claim when the plaintiff also had a claim for relief – i.e., an adequate remedy – under subsection "B" of section 502(a)(1). The issue before this court is, instead, whether Congress provided an adequate remedy for plaintiff's alleged injury in subsection "A" of section 502(a)(1). This difference does not represent a meaningful distinction,

Additionally, the court concludes – independently of plaintiff's concession – that the allegations of the complaint supporting plaintiff's breach of fiduciary duty claim also state a claim for relief pursuant to 29 U.S.C. § 1132(a)(1)(A) and § 1024(b)(4), the claim that plaintiff asserts in Count I of his complaint.  ERISA defines "administrator" as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A).[10] The Validata plan designates the "Employer" – defendant Validata – as the administrator. (Doc. # 18-2, ¶¶ 1.28, 2.2).[11]  It further defines "Administrator" to mean "the Employer

_____

however – both subsections are among  "ERISA's other more specific remedial provisions" (Jones, 370 F.3d at 1073).  This court is not bound to follow the panel's holding in Hamilton, to the extent its holding is contrary to that in Katz.  The Hamilton panel did not base its holding on a change in that  controlling law but, rather, it interpreted and applied Varity differently than did the Katz court. See  Smith v. GTE Corp., 236 F.3d 1292, 1300-1304 (11th Cir. 2001)(discussing prior panel precedent rule); see also Norrell v. Waste Away Group, Inc., 246 F.Supp.2d 1213, 1221 n. 10 (M.D. Ala. 2003)(following earlier Eleventh Circuit precedent despite contrary authority in later panel decisions).

[10]   The statute defines the term "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).

[11]   The court resolves defendant's motion – as to Count II – pursuant to Rule 12(b)(6).  In resolving a motion to dismiss for failure to state a claim, the court may consider a document attached to a motion to dismiss if "the plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."  Financial Security Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). Here, plaintiff refers to the Plan in his amended complaint and his claims depend on the relationships established by the Plan.  While plaintiff appeared to challenge the content of the excerpts attached to defendant's initial motion to dismiss (see Doc. # 15, p. 5), he does not dispute the content of the entire Plan document filed as a supplemental exhibit to defendant's initial motion to dismiss and

unless another person or entity has been designated by the Employer pursuant to Section 2.2 to administer the Plan on behalf of the Employer." (Id., ¶ 1.6).  However, under the terms of the plan, Validata maintains control over such designees, retaining the authority to specify their responsibilities and to revoke the designation.  (Id., ¶ 2.3). The plan documents demonstrate that Validata is the administrator of the plan, as defined in ERISA, whether or not Philips also is an administrator, by delegation from Validata or otherwise.  Thus, the allegations supporting plaintiff's section 502(a)(3) claim are sufficient to state a claim under sections 502(a)(1)(A) and (c) against Validata as administrator of the plan.  As defendant argues, the remedy for plaintiff's injury is a cause of action against the administrator for the relief provided by section 502(c), not a claim for breach of fiduciary duty.  Because ERISA otherwise provides an adequate remedy for the injury plaintiff alleges, plaintiff's amended complaint fails to state an actionable claim for relief under section 502(a)(3).  Jones, 370 F.3d at 1073; Ogden, 348 F.3d at 1287-88; Katz, 197 F.3d at 1088-89.  The court will, accordingly, grant Philips' motion to dismiss Count II.[12]

---

relied on by defendant in the motion to dismiss the amended complaint (see Doc. # 29).  Thus, the court  considers the Validata plan document in determining whether plaintiff states a claim in Count II.

[12]  The particular breach of fiduciary duty alleged in this case is the defendants' failure to comply with their duty of disclosure under § 1024(b)(4).  If plaintiff were not entitled to a requested disclosure under § 1024(b)(4) for any reason, defendants had no fiduciary duty to comply with the request.  See Hamilton, 244 F.3d at 827 (concluding that the employer/administrator had no fiduciary duty to provide claim forms to the plaintiff because: (1) the plaintiff had made no request in writing, and (2) claim forms "do not fall within the category of documents covered by § 1024").  Plaintiff here alleges no facts giving rise to a fiduciary duty of disclosure beyond that required by § 1024(b)(4) such as, for example, an injury arising from plaintiff's reliance on previous representations regarding the plan.  See, e.g., Hamilton, 244 F.3d at 822, 827 (finding a breach of fiduciary duty to provide

### Count I

Again, ERISA defines "administrator" to include "the person specifically so designated by the terms of the instrument under which the plan is operated" (29 U.S.C. § 1002(16)(A)) and it defines the term "person" to include, *inter alia*, both corporations and individuals (29 U.S.C. § 1002(9)).  As set forth above, the Plan specifies that Validata is the Administrator, unless it has designated another person to perform the duties of the Administrator, pursuant to section 2.2.  (Doc. # 18-2 at ¶¶ 1.6, 1.28, 2.2).  Philips moves for dismissal of Count I, plaintiff's claim against the defendants for violating the disclosure obligation that § 1024(b)(4) imposes on plan administrators, arguing that he is not subject to personal liability on this claim because he is not the plan administrator.  Plaintiff alleges to the contrary, however, and further alleges that Validata delegated its responsibilities as administrator to Philips.  Plaintiff's allegations, accepted as true and with reasonable inferences drawn in plaintiff's favor, are sufficient to overcome Philips' argument for dismissal under the Rule 12(b)(6) standard, particularly since the plan document provides expressly that Validata may appoint any person (including one of its employees) to perform the duties of the Administrator.  However, in the motion now before the court, Philips relies

---

"'complete and accurate information in response to participants' questions'" where plaintiff's reliance on the employer's negative responses to her queries – on "several occasions" over a couple of years – caused her to file an untimely claim with the plan's disability insurer)(citation omitted). Accordingly, Philips would be entitled to dismissal of Count II under Rule 12(b)(6) *even if* the court were to find that plaintiff's complaint fails to allege a violation of § 1024(b)(4) adequately – not because ERISA otherwise provides an adequate remedy, but because the complaint necessarily would then also fail to allege the violation of a fiduciary duty.

on his earlier-filed testimony by affidavit (see Doc. # 27, pp. 3-4). Plaintiff, in response, also

relies on his own previously-filed affidavit (see Doc. # 29, ¶¶ 3-4 (citing plaintiff's affidavit

testimony) and introductory paragraph (incorporating Doc. # 19)). Thus, the court advised

the parties of its intention – pursuant to Rule 12(d) – to consider the extrinsic evidence cited

by the parties and to treat the motion as one for summary judgment. (Doc. # 37). Although

permitted the opportunity to do so (id.), plaintiff filed no further response to the pending

motion; neither has he sought relief under Rule 56(d). Thus, the motion is submitted on the

existing record. The court, applying Rule 56 standards, now turns to the question of whether

Philips has demonstrated his entitlement to summary judgment on Count I.

The issue before the court is whether Philips is a plan administrator who may be held

liable personally under 29 U.S.C. § 1132(c)(1)(B). Resolution of the issue turns on whether

he is designated as a plan administrator by the terms of the plan and, if not, whether he is a

"*de facto* administrator" under Eleventh Circuit law. As to designation by the plan, Philips

points to the language of the plan designating the employer, Validata, as the administrator

and requiring that a person appointed by Validata to perform the duties of the administrator

must accept the appointment in writing; he testifies that no such appointment of administrator

duties or written acceptance has occurred. (Philips aff., Doc. # 18-1, ¶¶ 3, 5). In response,

plaintiff testifies that he and his wife, Janice Thompson, "communicated frequently with

Warren C. Phillips and his wife, Jill Phillips, regarding the Plan, [plaintiff's] beneficiary

interest in the Plan, and the mechanics of distributing [his] interest in the Plan into another

account" by telephone, e-mail, letter, and face-to-face and, further, that they have spoken with no other Validata representative regarding the plan.  (Brown aff., Doc. # 19-1, ¶ 6; <u>see also</u> <u>id</u>., ¶¶ 8-9).  Plaintiff argues that the facts "suggest" that Validata appointed Philips to perform the duties of the administrator.  (Doc. # 19, ¶¶ 4-5; Doc. # 29, ¶¶ 14, 16).

The plan document states:

### 2.2  DESIGNATION OF ADMINISTRATIVE AUTHORITY

The Employer shall be the Administrator.  The Employer may appoint any person, including, but not limited to, the Employees of the Employer, to perform the duties of the Administrator.  Any person so appointed shall signify acceptance by filing written acceptance with the Employer. ...

(Doc. # 18-2, p. 18; <u>see also</u> <u>id</u>. at ¶ 1.28 (defining "Employer" as "Validata Computer and Research Corporation")).  The plan further allows Validata, in the event that more than one person is serving as Administrator, to allocate and delegate responsibilities among them; however, it specifies that such allocation or delegation be "accepted in writing by each Administrator."  (<u>Id</u>., ¶ 2.3).  While the plan also permits those serving as administrators to allocate responsibilities among themselves, they must then "notify the Employer and the Trustee in writing of such action and specify the responsibilities of each Administrator." (<u>Id</u>.).  Plaintiff points to no provision of the plan allowing Validata to appoint any person as an administrator or to delegate duties of the administrator to any person without such action being acknowledged, in writing, by such person.  Philips testifies that there is no such written acceptance of administrator responsibilities by any person (Doc. # 18-1 at ¶ 5), and plaintiff

17

offers no evidence that any such writing exists.  Plaintiff's testimony that he and his wife communicated exclusively with either Philips or his wife regarding the plan is not sufficient to demonstrate the existence of a genuine issue of fact regarding whether Philips is a plan administrator by virtue of being "specifically so designated by the terms of the instrument under which the plan is operated" (29 U.S.C. § 1002(16)(A)).  Accordingly, plaintiff may proceed against Philips on Count I only if Philips may be held accountable as the "*de facto* administrator" under the law of this circuit.

Philips admits that, "[a]s President of Validata, [he] certainly was involved in administrative aspects of the Plan and in communicating with Plaintiff. " (Doc. # 27, p. 6).  He argues, however, that he performed all such actions on behalf of Validata. (Id.).  Citing Hamilton, plaintiff argues that the plan document's express designation is not dispositive of the identity of the administrator.  Plaintiff's contention is correct – the Eleventh Circuit has previously applied a "*de facto* administrator" analysis to find an employer not designated by the plan documents as the plan administrator to be subject to liability to a participant or to a plan, where the employer had assumed or retained control of administration of the plan.  See Rosen v. TRW, Inc., 979 F.2d 191, 193-94 (11th Cir. 1992).  However, the decisions rendered by the Eleventh Circuit imputing "*de facto* administrator" status to an employer have not involved the issue of whether the doctrine should be extended to reach corporate officers of the employer, in their individual capacities; additionally, they have involved

factual scenarios in which the plaintiff would otherwise have been left without a remedy.[13]

In Rosen, the plaintiff sued his employer for payment of benefits under an Executive Security Plan; the district court dismissed plaintiff's claims, concluding that the employer was not the proper defendant where the plan designated an administrative committee as the plan administrator.  The district court denied plaintiff leave to amend his complaint to add the committee and to amend his claim against the employer to allege that the administrative committee was "'an unincorporated, unfunded, unidentified, inactive entity, which is the alter ego of [the employer],'" 979 F.2d at 192-93. The Eleventh Circuit observed that "the statutory framework of ERISA fails to resolve the question of liability in the event of an inactive administrator" (id. at 193), and that dismissal of the plaintiff's claim "would deprive him of any remedy in the event that the company ultimately was found liable for assuming control of the plan's administration"  (id. at 194).  The Eleventh Circuit held that the district court had "erred in refusing to allow [the plaintiff] to amend his complaint to assert the claim that the administrative committee was inactive and the company was the actual plan administrator."  Id. at n. 2.  It further observed, however, that the district court's dismissal of the employer as a defendant based on the original complaint was proper, because "[the plaintiff's] original complaint failed to assert such a claim."  Id.

---

[13] Plaintiff cites Garren v. John Hancock Mutual Life Ins. Co., 114 F.3d 186 (11th Cir. 1997) as a case in which "[t]he Eleventh Circuit has applied the 'de facto administrator doctrine' ... to impose liability against those not designated as the administrator in the plan documents."  (Doc. # 15, p. 7).  In Garren, the Eleventh Circuit refused to impose liability against an insurer servicing the plan; it reasoned that the plaintiff's employer (*which was the entity designated by the plan as the administrator*) was the proper party defendant.  Id.

In <u>Hamilton</u>, the Eleventh Circuit noted –  citing <u>Rosen</u> – that "[p]roof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document."  244 F.3d at 824 (citing <u>Rosen</u>, 979 F.2d at 193).  The court observed that the "key question on this issue is whether Allen [the corporate employer] had sufficient decisional control over the claim process that would qualify it as a plan administrator under <u>Rosen</u>."  244 F.3d at 824.  The plan's claims booklet provided that "'[t]he Plan Administrator has designed [sic] the identified insurance companies *and* the Allen Bradley Company as its agents to administer the Plan, to process all claims and appeals, and to provide other administrative services.'"  <u>Id</u>. (emphasis in original).  Citing this express designation, along with facts demonstrating that "Allen did carry out its administrative designation by handing out the claims forms itself without getting prior permission from UNUM, and by fielding questions about the plan from employees" and deposition testimony from Allen's HR director identifying Allen's headquarters "as the headquarters of the plan administrator," the court found "sufficient indicators that point to Allen as a plan administrator."  <u>Id</u>.  The plan's disability insurer, UNUM, had denied the plaintiff's administrative claim for long-term disability benefits because the plaintiff "had not properly complied with the notice and proof-of-claim requirements of the policy, *i.e.* – Hamilton's claim was untimely" – and the plaintiff had not appealed the district court's grant of summary judgment in UNUM's favor.  (<u>Id</u>. at 823).  The Eleventh Circuit reasoned that,

while the untimeliness of Hamilton's claim deprived her of a cause of action against UNUM for its denial of benefits, this defense did not apply to her claim against Allen because there was a material dispute of fact regarding whether Hamilton had informed Allen of her disability claim "during the time in which her claim request would have been timely." Id. at 824.

The sole case cited by the plaintiff finding a corporate officer to be a "*de facto* administrator is Professional Helicopter Pilots Association v. Denison, 804 F. Supp. 1447 (M.D. Ala. 1992). In Denison, the plan named DWS – the corporate employer – as the plan administrator. Id. at 1449. However, DWS went into bankruptcy, leaving the plan underfunded due to its failure to make employer contributions to the fund and, also, its failure to deposit into the fund employee contributions it had withheld from employees' wages. Id. at 1449-50. When the plaintiffs discovered that the two principals of DWS – one serving as its president and the other as both executive vice-president and secretary – had failed to make the required contributions, it sought relief on behalf of the plan for their breach of fiduciary duty. The corporation's president admitted his status as a fiduciary. The court concluded that the other corporate officer was also a fiduciary, because the evidence demonstrated that both principals "were not only managers of DWS, they were also *de facto* joint administrators of the employee welfare plan." Id. at 1452. The district court's decision predated Rosen and did not, therefore, apply its reasoning. However, the Denison court's holding is consistent with the Rosen court's application of the doctrine to avoid depriving the ERISA plaintiff of

a remedy, as the administrator designated by the plan was in bankruptcy.

Plaintiff alleges that "Defendant Validata is Administrator of the Plan" (Amended Complaint, ¶ 4). ERISA permits the designation of a corporation as administrator (29 U.S.C. §§ 1002(9), 1002(16)(A)) and, as set forth above, the plan document designates Validata as the plan administrator. Plaintiff alleges no facts suggesting that he will be – or, even, that he *may* be – deprived of a remedy if he is limited to proceeding against Validata, the designated administrator. Therefore, he has failed to establish that application of the "*de facto* administrator" doctrine to allow him to proceed directly against Philips on Count I is either necessary to avoid leaving plaintiff without a remedy or otherwise appropriate under Eleventh Circuit law. See Rosen, 979 F.2d at 194 n. 2 (finding that dismissal of original complaint against the employer was proper, as plaintiff had not alleged that the designated administrator was inactive).

Plaintiff's testimony is not sufficient to demonstrate the existence of a genuine issue of fact regarding whether Philips is a designated plan administrator by virtue of delegation of Validata's administrator responsibilities under the terms of the plan, and his allegations are insufficient to invoke the *de facto* administrator doctrine. Accordingly, defendant Philips is entitled to summary judgment on Count I of plaintiff's amended complaint.

**CONCLUSION**

For the foregoing reasons, it is

22

ORDERED that the motion to dismiss filed by defendant Philips (Doc. # 27) is GRANTED, pursuant to Rule 12(b)(6), as to Count II.

It is further ORDERED that the motion – treated as one for summary judgment pursuant to Rule 12(d) by order entered on May 20, 2013 (see Doc. # 37) – is GRANTED as to Count I of the amended complaint.

DONE, this 8th day of July, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE